# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ROY S. HARTLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-01043-TWP-TAB ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Roy Hartley ("Hartley") requests judicial review of the final decision of the Deputy Commissioner for Operations for the Social Security Administration (the "SSA"), denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). For the following reasons, the Court **REMANDS** the decision of the Deputy Commissioner.

### I.     BACKGROUND

On October 9, 2013, Hartley filed an application for SSI, alleging a disability onset date of January 1, 2011. ([Filing No. 13-2 at 20](#).) His application was initially denied on December 16, 2013, ([Filing No. 13-4 at 5](#)), and upon reconsideration on April 8, 2014, ([Filing No. 13-4 at 15](#)). Administrative Law Judge Belinda J. Brown (the "ALJ") held a hearing on October 5, 2015, at which Hartley, represented by counsel, and a vocational expert ("VE"), Stephanie Archer, appeared and testified. ([Filing No. 13-2 at 37-62](#).) The ALJ issued a decision on January 6, 2016, concluding that Hartley was not entitled to receive SSI. ([Filing No. 13-2 at 17](#).) The Appeals Council denied review on February 7, 2017. ([Filing No. 13-2 at 2](#).) On April 4, 2017, Hartley timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) to review the final decision of the Deputy Commissioner denying Brogan benefits. ([Filing

No. 1.)  For the following reasons, the Court **REMANDS** the decision of the Deputy Commissioner.

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Deputy Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Deputy Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 416.945(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong". *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

### III. **FACTUAL BACKGROUND**

Hartley was 45 years of age at the time he applied for SSI. (Filing No. 13-5 at 2.) He has a limited education and previously worked as a forklift driver and an order picker. (Filing No. 13-2 at 28.)[1]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Hartley is not disabled. (Filing No. 13-2 at 29.) At step one, the ALJ found that Hartley has not engaged in substantial gainful activity[2] since October 9, 2013, the application date. (Filing No. 13-2 at 22.) At step two, the ALJ found that Hartley has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left knee, and obesity. (Filing No. 13-2 at 22.) At step three, the ALJ found that Hartley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Filing No. 13-2 at 25.) After step three but before step four, the ALJ found that Hartley has the RFC –

---

[1] Both parties provided a detailed description of Hartley's medical history and treatment in their briefs. (Filing No. 16; Filing No. 18.) Because that discussion implicates sensitive and otherwise confidential medical information concerning Hartley, the Court will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e*., involves significant physical or mental activities) and gainful (*i.e*., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

4

> to perform light work as defined in 20 CFR 416.967(b) except lift and carry twenty pounds on occasion and ten pounds frequently with pushing and pulling at the same weight and frequency, sit six hours in an eight-hour day, stand or walk four hours each in an eight-hour day, occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolding; never balancing; occasionally stooping, kneeling, crouching, or crawling; occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, and vibration.

(Filing No. 13-2 at 25.) At step four, the ALJ concluded, after considering Hartley's age, education, work experience, and RFC, and relying on the testimony of the VE, that Hartley is incapable of performing any of his past relevant work. (Filing No. 13-2 at 28.) At step five of the analysis, relying on the VE's testimony considering Hartley's age, education, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Hartley could have performed through the date of the decision. (Filing No. 13-2 at 28-29.)

## IV.  **DISCUSSION**

### A.  **Step Three Listing Analysis**

The Court will begin with Hartley's strongest argument, having found that the issue requires remand for further proceedings. Hartley argues that the ALJ's listing analysis is inadequate, adding "there is no analysis at all." (Filing No. 16 at 21.) The Court agrees.

In order to meet or equal an impairment identified in the listings, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing. *See* 20 C.F.R. §§ 416.925, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at step three). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003).

> To establish Listing 1.04(A), the regulations require:
>
> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1. In the decision, the entirety of the ALJ's listing discussion in the appropriate section is as follows:

> The medical evidence of record establishes the aforementioned severe impairments as medically determinable impairments. They are considered "severe" within the meaning of the Regulations because they represent more than a slight abnormality, and have more than a minimal effect on the claimant's ability to perform basic functional activities.

(Filing No. 12-3 at 25.)

The Court finds that the ALJ failed to offer more than a perfunctory analysis of Listing 1.04(A). Even labelling the analysis perfunctory would be generous. The quoted explanation of the listing finding actually appears to be boilerplate that would begin a step two analysis and does not provide any insight into the ALJ's step three analysis. The ALJ fails to even mention what listings were considered.

More importantly, there is evidence of record that could support that Hartley's cervical spine impairment meets the listing. An MRI taken October 22, 2012 revealed multilevel impingement of the spinal cord at C3-C4 and C5-C6, establishing the diagnostic criteria of the listing. ([Filing No. 13-13 at 18](#).) The consultative examination revealed markedly decreased range of motion in the cervical spine and absent deep tendon reflexes. ([Filing No. 13-7 at 39](#).) Another examination revealed slightly decreased muscle strength in the right upper extremity ([Filing No. 13-7 at 15](#).) Taken together, the examination findings demonstrate all the required clinical findings necessary to meet the listing. At a minimum, the ALJ should have articulated how she concluded

that the listing was not met based on the other evidence of record. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

The Deputy Commissioner presents conflicting evidence in connection with this suit. For example, the consultative examination mentioned above also indicated normal muscle strength, five out of five, in both the arms and legs and that sensation was normal. (Filing No. 13-7 at 39.) The examination also indicated that Hartley had normal grip strength and fine finger manipulative abilities. (Filing No. 13-7 at 39.) The ALJ did discuss the consultative examination in a previous section of the decision when analyzing step two. (Filing No. 13-2 at 23) (*Rice*, 384 F.3d at 370 n.5 ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" at each step).) However, the ALJ never actually mentions the normal consultative examination findings cited by the Deputy Commissioner. "Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight." *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986). Perhaps the ALJ did find other evidence more compelling that the listing was not met; if she did, the Court cannot follow her logic from the written decision. "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft*, 539 F.3d at 673 (citing *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). Moreover, the Deputy Commissioner is not permitted to supply a possible

7

explanation for the ALJ's step three findings where the decision itself is lacking. See *Kastner v. Astrue*, 697 F.3d 642, 649 (7th Cir. 2012) (citing the Chenery Doctrine).

The Deputy Commissioner's remaining arguments also fail. The Deputy Commissioner argues that 1) the ALJ need only minimally articulate her step three reasoning, 2) disability review forms completed by the state agency physicians fulfill the requirement for an expert medical opinion on the issue of medical equivalence, and 3) Hartley has not produced a conflicting medical opinion in support of his listing arguments. ([Filing No. 18 at 14-18)](#) (citing *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).) However, in *Scheck* "there was *no evidence* which would support the position that Scheck met or equaled the listing." *Scheck,* 357 F.3d at 701 (emphasis in original). Here, the evidence presents a colorable claim that Listing 1.04(A) is met, as discussed above.

Moreover, the timing of the medical evidence contained in the record in support of Hartley's listing arguments is important to the analysis. With regard to the state agency reviewing opinions in *Scheck,* the Court held that the "ALJ may properly rely upon the opinion of these medical experts." *Id.* at 700. However, the facts of *Scheck* are further distinguishable from the case here, where Scheck was required in a Disability Insurance Benefits only claim to establish disability prior to his date last insured, *Id.* at 699, and the state agency consultants had given opinions on the evidence through the date last insured, *Id.* at 700. A reviewing opinion can be conclusive, particularly when it is based on the entire medical record or the entirety of the relevant medical record. *Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir. 1987). However, the Seventh Circuit has not always held that an ALJ was entitled to rely upon the state agency reviewing opinion as substantial evidence. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the

reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)).

The last state agency consultant assessment by Dr. Ruiz was completed on April 8, 2014, reviewing the evidence of record through Exhibit 5F. (Filing No. 13-3 at 13-15.) Dr. Ruiz specifically considered Listing 1.04. (Filing No. 13-3 at 17.) Dr. Ruiz noted the evidence supporting his conclusions that no listing was met or equaled and that Hartley was capable of a reduced range of light work, including "MRI L/S and cervical spine in Oct. 2012 both with degenerative changes noted. EMG 11/2012 with L4/L5 and L5/S1 radiculopathy. L/S xray done 12/ 3/ 13 with mild L2/L3 and LS/S1 disc degeneration. Mild lower lumbar bilateral facet arthritis also noted on this study." (Filing No. 13-3 at 18.) The record did reference that MRIs had been ordered to get an updated evaluation of Hartley's cervical and lumbar spine. (Filing No. 13-7 at 15.) The consultative examiner also noted that the MRIs showed severe degenerative changes in the cervical spine and mild degenerative changes in the lumbar spine. (Filing No. 13-7 at 37.) However, the record did not appear to contain the actual MRI report itself, later added to the record at Exhibit 12F, indicating the important diagnostic showing of impingement (and Dr. Ruiz did not reference the finding). (Filing No. 13-13 at 18.) Furthermore based on the available record at the time, Dr. Ruiz concluded that Hartley did not have any severe impairment with his knees. The ALJ would later conclude that Hartley's severe impairments included degenerative joint disease of the left knee, based on imaging that she reviewed in her decision. (Filing No. 13-2 at 22-23.) The MRI of Hartley's left knee showing irregular and full-thickness cartilage loss was not taken

9

until January 27, 2015, well after Dr. Ruiz's review. ([Filing No. 13-13 at 19](#).) There is no evidence that Dr. Ruiz even considered an appropriate listing that corresponds with Hartley's left knee impairment. Even if the record does not establish that any listing is precisely met, the combination of Hartley's cervical, lumbar, and left knee impairments could equal the severity of one of the listed impairments. The Court finds that Dr. Ruiz's stale review, in light of the further diagnostic evidence, is not substantial evidence to the contrary.

To the extent that the Deputy Commissioner's brief could be taken to argue that Hartley was required to submit a medical opinion on a listing being met or equaled in order to rebut the consultants' opinion, the Court does not agree with the proposition. The burden is on the claimant at step three. However, the claimant's burden is merely to produce evidence in support of the claim, not to prove equivalence. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Furthermore, the SSA's own ruling establishes situations where an ALJ should get an updated medical opinion on equivalence. SSR 96-6p ("However, an administrative law judge … must obtain an updated medical opinion from a medical expert … [w]hen additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."). While the import of the ruling appears to primarily restrict the ALJ's ability to decide equivalence on their own, even when they feel the updated evidence may change the reviewing physician's findings, the procedure detailed in the ruling would be completely unnecessary if the burden were on the claimant to furnish such evidence. Further consideration is required to determine whether Hartley's impairments satisfy the requirements of any listing, either alone or in combination, based on the updated record.

**B.     Treating Physician Opinion**

Having found the issue above adequate to resolve this suit, the Court need not fully address Hartley's remaining argument that the ALJ improperly weighed the opinions of his treating primary care physician, Dr. Everman. The Court declines to do so here. However, in the interest of providing guidance on remand, the Court feels compelled to address specific issues with the ALJ's decision, some of which were raised by Hartley and some of which were not.

Beginning with the opinions of Dr. Everman, the ALJ found them deserving of "little weight." (Filing No. 13-2 at 28.) The ALJ explained,

> The opinion is severely strict and gives physical limitations and restrictions that are not warranted by the objective and clinical evidence. The evidence bears little or no relationship to the objective evidence regarding the claimant's impairments. In addition, the residual functional capacity [is] replete with subjective complaints such as constant excruciating pain and fatigue.

(Filing No. 13-2 at 28.) To a certain extent, the Court agrees with the ALJ. The ALJ must consider consistency "with the record as whole" when determining whether to give controlling weight to a medical opinion, and if not, in determining the particular weight that should be given the opinion. 20 C.F.R. § 416.927(c)(4). Certain opined limitations, like for example that Hartley must use a cane or other assistive device appear to have no basis in the record. (Filing No. 13-13 at 14.) However, the ALJ does not specify in this section of the decision, or any other section, the objective or clinical findings that actually detract from Dr. Everman's opinion. Oddly the decision predominantly, if not entirely, sets out only the abnormal clinical and objective findings that would arguably support the claim. Even where the Court agrees with the ALJ based on a review of the record, the Court is not able to trace the ALJ's logic based on the written decision.

Furthermore, there are limitations opined by Dr. Everman that require further consideration. For example, Dr. Everman assessed that Hartley's legs should be elevated to waist

11

level with prolonged sitting for two hours of an eight-hour day. (Filing No. 13-13 at 14.) The ALJ's written decision documents fairly consistent examination findings of effusion and swelling in the knees which could necessitate the limitation. (Filing No. 13-2 at 23.) Again, the decision does not document any contrary findings to rebut the limitation, for example where swelling was not indicated.

Dr. Everman also found significant manipulative limitations, which may be extreme based on the record, including that Hartley would be capable of fingering only five percent of the day. (Filing No. 13-13 at 15.) While again not cited by the ALJ, the consultative examination indicated that Hartley had normal grip strength and fine finger manipulative abilities. (Filing No. 13-7 at 39.) However, the ALJ's RFC does not account for any manipulative limitations, despite evidence of cervical impingement, limited range of motion, and decreased muscle strength in the right upper extremity as noted above. The record indicates complaints of "neck pain now and lasting days at a time [with] numbness and tingling in arms, has had disc decompression, last pain management specialist suggested surgery and primary care physician informed [patient] too young to have surgery, poor value to daily activities second[ary] to the pain." (Filing No. 13-7 at 13.). The ALJ further noted the diagnosis of an essential tremor in November 2012 that was mild at the time with holding postures or bearing weight. (Filing No. 13-2 at 24.) Here, the ALJ did note that the examination findings were normal in terms of sensory, coordination, reflex, and gait and concluded the tremor was not a severe impairment. (Filing No. 13-2 at 24.) "Furthermore, his tremors are not related to his anxiety and have been formally diagnosed as essential familial tremors that have persisted for the past ten to eleven years." (Filing No. 13-2 at 27.) Perhaps the ALJ concluded that Hartley had demonstrated that he could work with the longstanding impairment. However, in

12

July 2015, an examination noted "worsening moderate pace low amplitude essential tremor." (Filing No. 13-9 at 19.)

To the extent the ALJ criticizes the opinion for referencing subjective complaints, the Court has further concerns. The ALJ is instructed to consider "supportability" when weighing a medical opinion, particularly the medical signs and laboratory findings cited in the explanation of the opinion. 20 C.F.R. § 416.927(c)(3). However, the regulations further clarify "because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." *Id.* One of the advantages that a treating physician has in providing an accurate assessment is better familiarity with their patient's consistent subjective complaints. This is not a claim where there is no objective diagnostic imaging demonstrating severe impairments or one where clinical findings have been completely absent. The ALJ documents both in the decision.

Moreover, the evidence the ALJ cites in questioning Hartley's credibility is problematic. For one, the ALJ states, "[n]otably, he has not undergone surgery, injections, or physical therapy for a span of four to five years." (Filing No. 13-2 at 27.) The ALJ then contradicts herself later, noting that Hartley had a left knee injection in July 2014. (Filing No. 13-2 at 27.) The record also shows that Hartley had a right knee injection in March 2014. (Filing No. 13-7 at 61.) The record indicates that treatment was impeded by a lack of insurance for a period of time. (Filing No. 13-7 at 13.) The record notes that physical therapy provided only limited benefits previously. (Filing No. 13-8 at 44.) The record also establishes that Hartley was referred to orthopedic surgery, (Filing No. 13-8 at 45), a knee replacement was recommended, (Filing No. 13-8 at 44), but that that they were trying to wait until age fifty to have the surgery, (Filing No. 13-9 at 3). Given these

indications, the ALJ's considerations do not appear overly notable in evaluation of the severity of Hartley's complaints.

## V. **CONCLUSION**

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 5/10/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana


DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov